**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **W.B., B.B., and M.B.**

**No. 21-0998** (Fayette County 19-JA-145, 19-JA-146, and 19-JA-147)

## MEMORANDUM DECISION

Petitioner Mother T.B., by counsel Jamison T. Conrad, appeals the Circuit Court of Fayette County's October 29, 2021, order terminating her parental rights to W.B., B.B., and M.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katica Ribel, filed a response in support of the circuit court's order. The guardian ad litem, Vickie L. Hylton, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her post-adjudicatory improvement period, terminating her parental rights, and finding that the DHHR made reasonable efforts toward reunification.[2]

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner's first assignment of error also asserts that the circuit court erred in not continuing a hearing held on September 10, 2021. However, petitioner fails to include any argument in her brief in support of this issue. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on . . . . [and] must contain appropriate and specific citations to the record on appeal . . . . The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in

(continued . . .)

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner has a protracted history of Child Protective Services ("CPS") intervention and involvement in abuse and neglect proceedings. In 2009, petitioner's seven-month-old child was found dead in her home. Although petitioner claimed to have discovered the child after roughly one hour, medical staff determined that the child had been deceased for some time. As a result of this incident, the DHHR took custody of B.B. and W.B. and initiated abuse and neglect proceedings. Ultimately, that matter was resolved when petitioner successfully completed an improvement period, and the children were returned to her care. However, in 2016 all three children were placed in a legal guardianship with a relative because of petitioner's substance abuse problem, lack of a stable home, and inability to properly care for the children.

The current matter was initiated in September of 2019 when the DHHR filed a petition against other adult respondents, including the children's father. At that time, the DHHR did not include allegations against petitioner. Subsequent to this petition's filing, the relative's legal guardianship of M.B. was dissolved, and the child was placed with the father, although petitioner's parental rights remained intact. Further, in December of 2020, the legal guardian relinquished her guardianship over W.B. and B.B. after the DHHR filed an amended petition including allegations against the guardian.

The DHHR did not include allegations against petitioner until the filing of a second amended petition in February of 2021 after it was determined that petitioner could not accept custody of any of the children due to her substance abuse and other issues. According to the DHHR, petitioner "told the CPS worker than she cannot take care of the children." The DHHR also alleged that after the father regained custody, he dropped M.B. off at petitioner's residence and the child had been residing there even though petitioner was not supposed to be the child's physical custodian. The DHHR alleged that the residence, "a 4x4 camper," was inappropriate for the child. According to the record, petitioner lied to the DHHR when the children were removed from their legal guardian. Petitioner told the DHHR that she lived in a different residence that would have been appropriate for all three children. Further, petitioner admitted to abusing her

compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by [R]ule 10(c)(7)" are not in compliance with this Court's rules. Here, petitioner's brief in regard to the issue of a denied continuance is inadequate as it fails to comply with West Virginia Rule of Appellate Procedure 10(c)(7) and our December 10, 2012, administrative order. Accordingly, the Court will not address this issue on appeal.

prescribed medication, petitioner's boyfriend admitted that he was unable to have unsupervised visits with his own child because of his drug abuse, and drug paraphernalia for smoking methamphetamine was found in the home. Finally, the DHHR alleged educational neglect. Based on these facts, the DHHR alleged that petitioner abused and neglected the children because her substance abuse impaired her ability to properly parent.

After the petition's filing, petitioner tested positive for amphetamine, methamphetamine, and MDMA (commonly called Ecstasy) after a hearing in March of 2021. Petitioner then missed approximately twelve screens over the next three months and tested positive on two additional screens. Petitioner later stipulated to the allegations in the second amended petition and was adjudicated as an abusing and neglecting parent in regard to all three children. Thereafter, the circuit court granted petitioner a post-adjudicatory improvement period at a hearing in May of 2021. The terms of petitioner's improvement period required her to, among other things, submit to random drug screens, not possess or consume alcohol or controlled substances absent a valid prescription, submit to a psychological evaluation and follow all recommendations, avail herself of adult life skills services and parenting classes, remain in contact with the DHHR, and visit with the children.

Thereafter, petitioner's psychological evaluation was completed and resulted in a poor prognosis for improved parenting. This was based on a high risk of relapse; her past history of CPS involvement, including the death of an infant in her care; and her untreated mental health and substance abuse issues. The evaluator believed petitioner could improve if she actively participated in substance abuse treatment and demonstrated prolonged abstinence.

In August of 2021, the DHHR filed a motion to revoke petitioner's improvement period. As a basis, the DHHR alleged that petitioner was not fully compliant with drug screens and was abusing controlled substances. According to the record, petitioner tested positive for methamphetamine in June of 2021; tested positive for MDMA, methamphetamine, and amphetamine in August of 2021; and also failed to submit to screens in August of 2021, including one screen where the DHHR believed that petitioner transported urine into the testing facility in order to defeat the screen. As such, the DHHR alleged that petitioner violated the terms of her improvement period. The month after the DHHR filed the motion to revoke petitioner's improvement period, the record shows that petitioner tested positive for methamphetamine and amphetamine.

In September of 2021, the circuit court held a hearing on the DHHR's motion to revoke petitioner's improvement period. The guardian joined the DHHR's motion. Petitioner's counsel indicated that petitioner had found a substance abuse treatment center and would be submitting to treatment soon. Based on the evidence, the court found that petitioner continued to test positive for drugs over the course of her improvement period and failed to take advantage of opportunities to enter substance abuse treatment. The court found that petitioner "has floated around for over a year without making any positive changes." As such, the court revoked petitioner's improvement period.

Prior to the dispositional hearing, the guardian provided a report indicating that "[t]he children do not want a relationship with [petitioner] and have directly requested the parental

3

rights of [petitioner] be terminated." Importantly, the guardian also indicated that petitioner "did not stay 24 hours before she left" her most recent substance abuse treatment program. Accordingly, the guardian recommended termination of petitioner's parental rights.

The court held a dispositional hearing in October of 2021. Petitioner did not attend but was represented by counsel. According to the court, petitioner's whereabouts were unknown. Based on the evidence, the court found that petitioner minimally participated in services throughout the proceedings and consistently tested positive for controlled substances. As such, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. Finding that the children's welfare required it, the court then terminated petitioner's parental rights.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that it was error to terminate her improvement period because she was only given approximately four months under the improvement period and was receptive to inpatient treatment. However, the record totally undermines this unsupported assertion. At the hearing in September of 2021, petitioner's counsel informed the court that petitioner would soon be submitting to the required treatment, but the record shows that petitioner left this treatment program after only one day, illustrating her unwillingness to fully participate in the improvement period. Petitioner then failed to attend the dispositional hearing, only further demonstrating her unwillingness to participate in the proceedings. While on appeal petitioner attempts to excuse her repeated positive drug screens by asserting that she was

---

[3]The father's parental rights were also terminated. The permanency plan for the children is adoption in their current foster homes.

suffering from substance abuse disorder, this argument is unavailing because accepting the same would give parents suffering from substance abuse issues carte blanche to continue abusing drugs during abuse and neglect proceedings. It simply cannot be the case that a parent should not be held responsible for continuing the very conduct that necessitated the filing of the petition in the first instance.

According to West Virginia Code § 49-4-610(7), when a party files an appropriate motion, "the court shall terminate any improvement period granted pursuant to this section when the court finds that respondent has failed to fully participate in the terms of the improvement period." On appeal, petitioner in essence acknowledges that she was not fully complying by asserting that she "was making the decisions necessary to fully comply." Contemplating full participation misses the mark. The standard is full participation, and her argument that she was thinking about fully complying or even taking steps toward full compliance does not overcome the DHHR's evidence of her lack of full compliance. Further, while petitioner argues that it was error to terminate her improvement period because it had only been ongoing for four months, there is no requirement in West Virginia Code § 49-4-610(7) that an improvement period last for any specific length of time before termination is appropriate. Rather, it imposes an affirmative duty on the court to terminate an improvement period upon a party's motion when the evidence shows that the parent has failed to fully participate. The evidence below demonstrated just that. As such, we find no error in the court's termination of petitioner's improvement period.

Petitioner also argues that the DHHR "did not provide [her] with the services needed to fully comply with and complete" the improvement period, though she provides no elaboration. Nevertheless, her claim is—again—unsupported by the record, which shows that the DHHR provided her with ample services, including a psychological evaluation, assistance with obtaining inpatient substance abuse treatment, adult life skills and parenting education, drug screening, and transportation because of her lack of a driver's license. It is unclear what else, exactly, petitioner believes the DHHR should have done in order to facilitate her cooperation. Absent any specific argument as to how petitioner believes these services to be insufficient, she cannot be entitled to relief.

Next, petitioner argues that the court's finding that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect was in error. We do not agree. Contrary to petitioner's assertion that none of the circumstances set forth in West Virginia Code § 49-4-604(d) were present, the circuit court found that petitioner consistently tested positive for controlled substances throughout the proceedings and failed to comply with services designed to remedy the conditions of abuse and neglect. According to West Virginia Code § 49-4-604(d)(3), there is no reasonable likelihood that a parent can substantially correct the conditions of abuse and neglect when

> the abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Given the overwhelming evidence of petitioner's noncompliance and continued substance abuse, it is clear that this finding was appropriate.

In support of her argument that termination of her parental rights was inappropriate, petitioner again takes issues with the amount of time she was afforded to demonstrate improvement. It is important to note, however, that although the DHHR did not include allegations against petitioner until the filing of the second amended petition in February of 2021, the conditions of abuse and neglect at issue have persisted for years. According to the record, petitioner's substance abuse resulted in the children being placed in a legal guardianship in 2016. While petitioner would have this Court believe that she only had a matter of months to address her issues, the reality is that petitioner took no steps to resolve her substance abuse for several years prior to these proceedings. Petitioner also asserts that "[g]iven the very brief existence of the proceeding, the DHHR did not provide the necessary services" to constitute reasonable efforts to achieve reunification. Much like her argument above that the DHHR did not provide services sufficient to assist in her improvement period, this argument is entirely without merit. Again, it is important to stress that the DHHR provided petitioner with a litany of services, but she simply chose not to fully comply. As such, petitioner is entitled to no relief.

Finally, petitioner also asserts that because the case began with the children in a legal guardianship, the court should have again placed the children in a legal guardianship at disposition instead of terminating her parental rights. This argument ignores several important issues. The first is that the children's guardianship was revoked after it was alleged that the guardian abused and neglected the children. As such, the prior guardianship was not viable. Further, the children all expressed a desire to be adopted in order to obtain the stability associated with that permanency option. Therefore, the children's best interests clearly required termination of petitioner's parental rights. As we have explained, "'[i]n a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948)." Syl. Pt. 3, *In re S.W.*, 233 W. Va. 91, 755 S.E.2d 8 (2014). Further, "[i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604], the circuit court shall give priority to securing a suitable adoptive home for the child." Syl. Pt. 3, in part, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Accordingly, we find no error in the court's decision to terminate petitioner's parental rights.

Finally, we note that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As set forth above, the court had ample evidence upon which to base this finding. Therefore, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 29, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: April 14, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment